Isabella G. Burns
vs.        Eq. No. 8402.
Robert E. Burns, et al.

### May 2, 1929.

BAKER, J. Final hearing.

The chief parties hereto are husband and wife. The bill is brought by the latter to prevent her husband from alienating property without her consent and to reach certain other property which she claims the respondent Burns actually owns, although not in his own name, and for injunctions in aid of said relief prayed for.

The first issue presented, and upon the determination of which rests in a large measure the disposition of the case, relates to the validity of a certain alleged marriage agreement entered into in writing by Mr. and Mrs. Burns, and which appears in the case as Exhibit 1.

The testimony bearing upon this point is given almost entirely by the two chief parties, although, of course, the Court is assisted by various exhibits presented and by the testimony of a few other witnesses.

The complainant's contention in substance is that before the parties were

married an oral agreement was made by them which several years later was incorporated or embodied in the written agreement, Exhibit 1. This understanding in substance was that upon the death of either party all the property of any kind owned by either during the marriage was to go to the survivor, and, further, that neither should sell or give away anything without the consent of the other.

It is agreed that in this written document the date "1914" is a typographical error, the correct date being "1904."

The respondent denies the making of any such oral antenuptial agreement with his wife and further says that the written document, Exhibit 1, was not signed by him in its present form.

The testimony of both parties reveals improbabilities and inconsistencies, and the proper disposition of the case is not easy.

The respondent maintains that at or about the year 1919, which is the date on said exhibit, he was having trouble with his wife in regard to property matters, and there are indications in the testimony that she was more interested in Mr. Burns' property than in himself. In order to pacify her, he testifies, he first made a will in her benefit in 1920 and later on, in 1922, made a tentative arrangement regarding joint tenancy of his property and also contemplated making conveyances to a trust company by way of a trust deed in favor of himself and his wife, but that none of these satisfied her and that thereafter he drew up in his own handwriting, on a sheet of paper, a certain agreement substantially of the same tenor as the typewritten agreement now presented as Exhibit 1, which he signed but which his wife did not sign, and which he was later told had been destroyed.

The testimony of Mr. Burns in regard to this matter has been somewhat contradictory in the various hearings which these parties have had before this Court and in the judgment of the Court it may well be that this question of placing in writing a marriage or antenuptial agreement may have been the first instead of the last step in the chain of proceedings relating to the property rights between Mr. Burns and his wife and may well have been done in 1919 rather than in 1922, as he now claims.

The testimony does show, of course, that for some considerable time after the marriage, Mr. Burns did make conveyances of real estate and transfers of other property, but it also appears that his wife had knowledge of these and signed the necessary papers freely in order to consummate the transactions.

It can not be denied that the execution of such a paper approximately fifteen years after the original oral agreement presents a most unusual situation. At the same time, in answer to this, the complainant calls to the Court's attention that Mr. Burns himself testified that he wrote out in his own handwriting a paper which was of the same general import as the typewritten one here presented and it, therefore, presumably referred to the oral agreement entered into by the parties prior to the marriage.

After a careful consideration of all the testimony bearing upon it, and in spite of the somewhat unusual situation presented, the Court finds that the so-called marriage agreement, Complainant's Exhibit 1, is valid and binding upon Mr. Burns and was signed by him in the form in which it was presented to the Court.

As some of the reasons for reaching this conclusion, the Court may refer to the testimony of Mr. White, who identifies his name on the document as a witness, although he is unable to recollect the circumstances of the signing. There is also the evidence of two relatives of Mrs. Burns, who tes-

tified to seeing the paper at different times in substantially the same form as it is now, and, making due allowance for the fact that these witnesses are relatives of the complainant, their appearance was good and the Court sees no valid reason for entirely disbelieving their testimony. It may also be noted that it appeared that on December 17, 1919, at or about the same date that this Exhibit 1 is supposed to have been executed, Mrs. Burns made a certain mortgage transfer to Mr. Burns in the Union Trust Company in which proceeding, Mr. White was the notary public.

Perhaps one of the most important reasons that the Court can give for holding that Exhibit 1 is valid and should be binding upon the parties is that Mr. Burns can not in any way explain how his signature appeared on the typewritten paper. He admits the signature there to be his but states that his only recollection is the signing of a document in long-hand which he himself wrote out. He admits that this writing was of the same general nature as Exhibit 1 and therefore said exhibit must have expressed his views and intentions at that time. An examination of Exhibit 1, in the judgment of the Court shows no indication of erasures, interlineations, changes or the like. Further, Mr. Burns' testimony in the various hearings involved in the litigation between himself and his wife regarding these matters is somewhat contradictory and inconsistent. In view of all this, the Court feels satisfied that the document as presented is genuine.

It appears that at some time in the past, the complainant began an action at law based upon said marriage agreement in which proceeding she later submitted to a voluntary nonsuit. Mr. Burns contends that by bringing the law action she made an election of remedies and can not proceed with this bill in equity.

The Court does not believe this contention is sound. Apparently the better rule is that the mere bringing of an action dismissed before judgment, and where there has been no element of an estoppel in pais, does not constitute an election.

9 R. C. L. 960.

The respondent Burns also argues that the complainant has been guilty of suppressing evidence and therefore should not be given relief. He is here referring to a situation in which the complainant made use of the privilege existing between client and attorney. This presented during the trial a question of law for determination.

In the opinion of the Court, complainant was in no way guilty of suppressing evidence; otherwise the privilege of a client to talk freely with counsel would amount to little or nothing. The Court finds, therefore, that complainant is entitled to the relief prayed for against the respondent Burns in connection with property now owned or held by him.

One of the respondents is Mrs. Bannon, Mr. Burns' sister. It appears that she has the legal title to certain greenhouse property, now leased, which property the complainant claims actually belongs to Mr. Burns.

The Court believes this to be the case. Mrs. Bannon, although the title to this property was involved, did not testify. The evidence shows that when this property was purchased at an auction sale, Mr. Burns made the necessary deposit from his own account. The lessee has done all his business with Mr. Burns. The bank account has been handled by Mr. Burns, although nominally as agent for Mrs. Bannon. As a matter of fact, Mr. Burns made no very serious contention that this was not his own property. The Court is clearly satisfied that it is actually his. The holding of the title in the name of Mrs. Bannon, would be, it seems, in fraud of the so-called mar-

riage agreement, and the Court therefore finds that the complainant is entitled to the relief prayed for against Mrs. Bannon in so far as it relates to the so-called greenhouse property.

The respondent Caroline W. Rubery has the title, subject to certain mortgages, to property located on George street in the city of Providence. The complainant contends that this property really belongs to Mr. Burns. The Court does not believe that the evidence on this issue is so clear as to warrant a finding to that effect. The testimony seems to show that the respondent Rubery, who conducts a rooming house in this property in question, and who was assisted in the purchase thereof by Mr. Burns, put a substantial amount of her own money into the property. She has also made certain payments on the principal of the first mortgage and has paid several years' interest on said mortgage. The fact that Mr. Burns had certain fire insurance policies on furniture of his own transferred to the George street address in and of itself is not very conclusive. Mr. Burns had an explanation for this and it is quite clear that the respondent Rubery knew nothing about this matter. While possibly her testimony in regard to certain notes and checks in connection with money advanced her by Mr. Burns was not entirely free from contradiction, nevertheless the Court believes that the weight of the evidence supports her contention that the George street property is her own. It appears quite clearly that there is more or less feeling on the part of the complainant towards the respondent Rubery, but in the opinion of the Court the testimony reveals nothing much more than suspicion that this property belongs to Mr. Burns.

The Court therefore finds that the complainant is not entitled to relief against the respondent Rubery.

A decree may be entered in accordance with the above findings.

For complainants: Wilson, Churchill & Curtis.

For respondents: Gardner Moss & Haslam, Huddy & Moulton, Boss, Shepard and McMahon.